ADELA J. SMITH et al.

*v.*

BIRD W. SPENCER.

[Decided February 14th, 1913.]

1. Where the complainant and defendant are owners of two adjoining lots of land and hold title subject to restrictive covenants running with the land, to the effect that the respective owners in the erection of dwelling-houses thereon should each keep away from the boundary line and not approach it nearer than ten feet, and the complainants' house was erected first, so that the third floor thereof and the eaves of the roof overhang the restricted space two feet and two inches, but the overhang is twenty-four feet and eight inches above the level of the ground, and the eaves of the defendant's house overhang the restricted space two feet and two inches, and there is a cellarway extending three feet or thereabouts farther into the restricted space, which cellarway is covered with inclined doors and does not extend upwards beyond the level of the foundation, and it appeared from the proofs that the violations of the covenant in question by both the complainants and defendant were not intentional, but arose from mistake or sheer carelessness in the location of their respective buildings—*Held*, that the encroachment by each party while it may violate the letter of the restriction, does not in any sense violate its spirit and general intention.

2. What the parties contracted for and what each intended to receive was the benefit which would accrue to their respective properties by reason of the twenty-foot open space between their houses.

3. These violations are so unimportant in their features and so little violative of the spirit of the covenant in question, that they ought not to be considered, and they ought not to be relied upon as the foundation of a decree to compel such extensive alterations in both houses as will be necessary to make them conform exactly to the covenant.

4. If, however, the violation by the defendant should be considered to be material and vital, then the complainants cannot urge the said violation of which they complain as the basis for a decree against the defendant, for the reason that they themselves are guilty of the same kind of violation of the covenant, and that long before the erection of the defendant's house had been begun. It is well settled that one who violates a mutual covenant cannot complain in a court of equity of a similar violation by his neighbor.

5. With respect to a certain other projection to the defendant's house extending over the restricted line and which is a material violation of the covenant, the complainants are guilty of laches because they delayed

to take legal proceedings until the defendant's building was half constructed, after a serious expenditure of money, when they should have taken such legal proceedings as soon as they had ascertained the facts.

On final hearing on bill, answer, replication and proofs.

*Mr. Andrew Foulds, Jr.,* for the complainants.

*Mr. Henry C. Whitehead,* for the defendant.

HOWELL, V. C.

In 1901 the VanNordt Land Company owned the two tracts of land which are now owned by the complainants and the defendant, respectively, lying in one plot, and undivided. The plot now owned by the defendant was conveyed by it on June 29th, 1901, and by mesne conveyances the title became vested in the defendant. It conveyed the complainants' land on April 3d, 1902. In the conveyance which it made of the complainants' tract a covenant was inserted, the portion of which now in dispute reads as follows:

"Only one house shall be built upon said plot, which house shall cost not less than $3,500, and shall be set back at least thirty-five feet from Paulison avenue and at least ten feet from the southeast line of said plot."

There was also a covenant in the same deed by the grantor that when it should convey the adjoining plot which is now owned by the complainants, it would insert therein a covenant as follows:

"Only one house shall be built upon the said plot, which house shall cost not less than three thousand five hundred dollars and shall be set back at least thirty-five feet from Paulison avenue and at least ten feet from the above-described premises which are conveyed by this instrument to the aforesaid party of the second part."

When the VanNordt Land Company conveyed the tract now owned by the complainants the covenant agreed upon was inserted in the deed. It was conceded that the covenants run with the land and that the respective owners in the erection of dwelling-houses thereon should each keep away from the boundary line

and should each not approach it nearer than ten feet. The complainants' house was erected first; the third floor thereof and the eaves of the roof overhang the restricted space two feet and two inches, but the overhang is twenty-four feet and eight inches above the level of the ground.

The defendant began the erection of a house on his plot in August of 1911. After the foundation had been laid out the complainants suspected that some portion thereof was within the restricted area, and so notified the defendant. The defendant, however, continued his building operations and finished the house as contemplated. The eaves of the defendant's house overhang the restricted space two feet and two inches, and there is a cellarway which extends three feet or thereabouts further into the restricted space. This cellarway is covered with inclined doors and does not extend upwards beyond the level of the foundation.

Before the defendant's house had been finally completed, and on December 18th, 1911, the complainants filed their bill praying for an injunction to prevent the defendant from locating any building upon his said plot of land which should not be at least ten feet from the said boundary line, and that he be compelled to remove any portion of his building which might be found to be within ten feet of such boundary line, and that he might be enjoined and restrained from maintaining a kitchen on the avenue front of his building, and further restrained from operating or conducting his building in such a manner as to constitute a nuisance, or as to injure the property of the complainants, with a prayer for further relief.

The answer admits the covenants and the locations of the two buildings and the amounts of the encroachments substantially as they are herein above set out, and on the hearing there was very little, if any, dispute about the facts.

That portion of the bill which prays that the defendant may be restrained from using his kitchen and maintaining a nuisance must be disregarded. The defendant's house has never yet been occupied, and the kitchen has never been used; no nuisance has yet been committed or threatened, and on this issue the decision must be for the defendant.

It is quite plain from the proofs that the violation of the cove-

nant in question by both the complainants and the defendant were not intentional, but arose from mistake or sheer carelessness in the location of their respective buildings. I do not think there was any intention on the part of either to aggressively and wantonly violate the covenant. Evidently, the location of the two buildings was made by someone who either did not know of the covenant or did not take pains to regard it; but in my opinion the encroachment by each party while it may violate the letter of the restriction, does not in any sense violate its spirit and general intention. What the parties contracted for and what each intended to receive was the benefit which would accrue to their respective properties by reason of the twenty-foot open space between their houses. Each desired to have light and air perpetually insured to his or her dwelling-house. So long as this object is attained the violations of the covenant would seem to be immaterial. The overhang of two feet and two inches of the complainants' house, being, as it is, upwards of twenty-four feet above the surface of the ground, does not in any sense deprive the defendant of the general benefit above referred to which he contracted for, and the same remark may be made concerning the overhang of the defendant's house, which, beginning upwards of fifteen feet above the surface of the ground, does not seem to me to interfere with the general object of the covenant. The cellarway, covered with its inclined doors, seems to disturb the situation quite as little as the overhanging parts of the houses.

I, therefore, am of the opinion that these violations are so unimportant in their features and so little violative of the spirit of the covenant in question, that they ought not to be considered, and they ought not to be relied upon as the foundation of a decree to compel such extensive alterations in both houses as will be necessary to make them conform exactly to the covenant. The doctrine of immaterial violations is discussed in *Morrow* v. *Hasselman, 69 N. J. Eq. (3 Robb.) 612; Barton* v. *Slifer, 72 N. J. Eq. (2 Buch.) 812,* and *Newbery* v. *Barkalow, 75 N. J. Eq. (5 Buch.) 128.* If, however, the foregoing should be an erroneous view of the case, and the violation by the defendant should be considered to be material and vital, then it is quite apparent that the complainants could not urge the violation as the basis for a

decree against the defendant, for .the reason that they are guilty of the same kind of violation of the covenant, and that long before the erection of the defendant's house had been begun.  It is well settled that one who violates a mutual covenant cannot complain in a court of equity of a similar violation by his neighbor. *Roberts* v. *Scull, 58 N. J. Eq. (13 Dick.) 405; Ocean City* v. *Headley, 62 N. J. Eq. (17 Dick.) 322.*  On this branch of the case, therefore, and on either of the grounds mentioned, the judgment must be for the defendant.

There is, however, a projection to the defendant's house which is one story high and about twenty feet long, which does extend over the restricted line about fifteen inches almost, in the form of a bay window.  It is much the same construction as was dealt with by this court in *Kirkpatrick* v. *Peshine, 24 N. J. Eq. (9 C. E. Gr.) 206,* and in *Righter* v. *Winters, 68 N. J. Eq. (2 Robb.) 252,* and is material, for the reason that it extends fifteen inches into the restricted space.  The complainants informed themselves of the situation directly after the foundations therefor had been laid, and on October 31st, 1911, or the day following, their counsel wrote a letter to the defendant calling his attention to the erroneous location of his building, and a considerable correspondence ensued between that time and the filing of the bill on December 18th following.  In the meantime the construction was going forward, and until the date of the filing of the bill no proceedings were taken to enjoin the construction.  It was the duty of the complainants under this state of facts to act immediately after they had ascertained what the situation was.  *Sutcliffe* v. *Eisele, 62 N. J. Eq. (17 Dick.) 222; Zelman* v. *Kaufherr, 76 N. J. Eq. (6 Buch.) 52; Meaney* v. *Stork, 80 N. J. Eq. (10 Buch.) 60.*  The complainants cannot, in a situation like this, protect their rights by claiming such rights, however persistently, by mere correspondence.  Legal proceedings must be taken before there has been a serious expenditure of money.  They waited until the defendant's building was half finished, and not until then did they seek the relief which they should have sought as soon as they had ascertained the facts.  On this branch of the case I must hold that the complainants are guilty of laches.

The complainants, therefore, can have no relief against the defendant, and the bill must be dismissed, with costs.