JOURNAL ENTRY AND OPINION
Peter K. Ormond sued the Rollingbrook Estates Homeowners Association (hereafter "REHA"), of which he is a member, neighbors Donald and Pamela Washkewicz, and the City of Solon, Ohio (hereafter "Solon"), for injunctive, declaratory, and monetary relief in the Cuyahoga County Common Pleas Court. Ormond sought a ruling that a detached garage the Washkewiczes were constructing on their property was being built in violation of the declarations of restrictions and by-laws of REHA and that the Washkewiczes were wrongfully granted a variance by the City of Solon without notice to Ormond. The trial court denied Ormond's application for a temporary restraining order and, following a hearing on Ormond's application for preliminary and permanent injunctive relief, rendered judgment in favor of REHA and the Washkewiczes after finding that the detached garage did not violate REHA's declaration of restrictions or by-laws. The court separately dismissed Ormond's claims for relief against Solon. Upon consideration of Ormond's appeal, we conclude that the trial court correctly rendered judgment in favor of REHA and the Washkewiczes and correctly dismissed Ormond's damages claim against Solon. The writer believes that the trial court erred in dismissing Ormond's claim for declaratory and injunctive relief against Solon. The majority, however, believes that there being no remedy for any such error, the judgment of the trial court should be affirmed. We therefore affirm, although the writer would affirm in part and reverse in part.
The Rollingbrook subdivision was developed by Transco Construction, Inc., in Solon, Ohio. Each sublot in Rollingbrook Estates contains five acres of land. The sublots were designed to be exclusive, estate-type lots. Transco authored and placed certain declarations of restrictions on the lots in the Rollingbrook subdivision on August 6, 1986 and again by amendment on January 28, 1988. Transco eventually turned over control of the deed restrictions to the Rollingbrook Estate Homeowners Association (REHA).
Donald and Pamela Washkewicz own the property located at 7400 Rollingbrook Trail. Their home consists of a one-family dwelling and an attached four-car garage with a side entrance. Peter Ormond owns the property at 7420 Rollingbrook Trail, which is contiguous to the Washkewiczes' property. Ormond has invested between $1 million and $2 million into his home and property.
Sometime in early 1997, the Washkewiczes began designing a detached four-car garage to be placed on their property. The proposed garage was to be constructed of the same materials to match the main dwelling and was to be located separately on the side of the Washkewiczes' dwelling extending into the front yard portion of their land. The foundation and ground level of the garage was to be located no closer than 25 ft. from any sideline or 150 ft. from the rear line.
On October 18, 1997, Pamela Washkewicz attended a clambake hosted by Dick Nelson, the sole member of REHA's architectural review committee. Mrs. Washkewicz showed the original plans for the proposed garage to all attending association board members and officers, including Dick Nelson and Wolfgang Mueller, who was the President of REHA at the time. Ormond did not attend the clambake. The original architectural drawings were not accompanied by information on the proximity or spacial relationship between the proposed detached garage and the Washkewiczes' property or dwelling. No officer or REHA board member ever expressed any adverse concerns over the proposed structure.
REHA's by-laws do not specifically mandate that a special or formal meeting be held for the purpose of obtaining approval for construction. REHA has the discretion to determine in what manner approval is to be sought. On October 21, 1997, REHA President Mueller gave the Washkewiczes written approval for their proposed detached four-car garage.
The Washkewiczes filed declarations of restrictions with the county declaring that the structure would not be used as a carriage house or living quarters or be otherwise occupied. The City of Solon issued a building permit for the Washkewiczes to build the detached garage structure. The Washkewiczes entered into a building contract with R D Contractors to construct the detached garage for a contract price of approximately $80,000.00.[1]
Construction had begun and the Washkewiczes had spent at least $30,000.00 when Ormond, having observed the construction in progress, filed this action on November 19, 1998 for injunctive and declaratory relief against REHA, the Washkewiczes, and the City of Solon.[2] Ormond alleged that the Washkewiczes' detached garage violated the deed declarations applicable to the Rollingbrook Estates. The trial court denied Ormond's application for a temporary restraining order and, after expedited discovery, conducted an evidentiary hearing on December 29, 1998, on Ormond's motion for preliminary injunction. Exercising its discretion under Civil Rule 65, the court deemed the hearing to be a trial on the merits with respect to Ormond's claims for injunctive relief against REHA and the Washkewiczes. The court also granted Ormond leave to file a supplemental motion for preliminary and permanent injunction addressing matters learned from a survey the court allowed Ormond to conduct after the December 29, 1998 evidentiary hearing.
On April 9, 1999, the trial court ruled against Ormond on all claims. The court rendered findings of fact and conclusions of law as to Ormond's claims against REHA and the Washkewiczes and, by separate entry, dismissed Ormond's amended complaint against Solon. On April 20, 1999, Ormond filed a motion "pursuant to Rule 59 of the Ohio Rules of Civil Procedure" seeking to amend the court's findings of fact and conclusions of law based on newly discovered evidence. On April 26, 1999, the court denied Ormond's motion. Ormond appealed on May 24, 1999.[3]
Ormond's first and second assignments of error assert:
 I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR TEMPORARY RESTRAINING ORDER.
 II. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF.
Rather than arguing these assignments of error separately, see App.R. 16(A)(7), Ormond's brief discusses them jointly and contends that the court erred in denying him injunctive relief against REHA and the Washkewiczes because the detached garage violated the deed restrictions.We will likewise address these assignments of error jointly. We find that they are not well taken.
When deciding whether to grant injunctive relief, courts consider: (1) whether the party seeking injunctive relief is likely to succeed on the merits; (2) whether issuing injunctive relief will prevent irreparable harm for which there exists no adequate remedy at law; (3) whether and to what extent others will be injured by granting such relief; and (4) whether the public interest will be served by granting injunctive relief. See Cleveland v. Cleveland Elec. Illum. Co. (1996),115 Ohio App.3d 1, 12; Corbett v. Ohio Bldg. Auth. (1993),86 Ohio App.3d 44, 49. The party seeking injunctive relief must establish its right to such relief by clear and convincing evidence. See Zavakosv. Zavakos Enterprises, Inc. (1989), 63 Ohio App.3d 100, 103; SouthernOhio Bank v. Savings Assn. (1976), 51 Ohio App.2d 67. "The grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." Garono v.State (1988), 37 Ohio St.3d 171, 173.
In this case, Ormond sought injunctive relief on the basis that the construction of a detached garage on the Washkewiczes' property violated the declaration of restrictions. Restrictive covenants establishing a general building scheme or plan for the development of a tract of property that make the property more attractive for residential purposes are generally enforceable unless contrary to public policy. Dixon v. TheVan Sweringen Co. (1929), 121 Ohio St. 56, syllabus at para. 1; Bennerv. Hammond (1996), 109 Ohio App.3d 822, 827. An owner of a lot subject to deed restrictions may maintain an action to enforce the same restrictions imposed upon other lots by a common grantor. Wallace v. The Clifton LandCo. (1915), 92 Ohio St. 349, syllabus at para. 1; Catawba Orchard BeachAssn., Inc. v. Basinger (1996), 115 Ohio App.3d 402, 407; Devendorf v.Akbar Petroleum Corp. (1989), 62 Ohio App.3d 842, 845.
Determining whether the structure built on the Washkewiczes' property violated the deed restrictions requires the application of certain time-honored rules of law.
 The first and most fundamental of these rules of course is that of arriving at the intention of the parties from the language used.
 The second is that the language be construed strictly against the restrictions and in favor of the free use of property. This is a settled rule of construction, based upon the old principle that restrictions are not favored in the law.
Hitz v. Flower (1922), 104 Ohio St. 47, 57. See also Driscoll v.Austintown Associations (1975), 42 Ohio St.2d 263, 276 ("Our legal system does not favor restrictions on the use of property.") The words used in a restriction will be given their common and ordinary meaning in light of the factual circumstances surrounding their drafting. See Arnoff v.Chase (1920), 101 Ohio St. 331, 335; Benner v. Hammond, supra,109 Ohio App.3d at 827. If the language in a restrictive covenant is clear and not doubtful in meaning, the court must enforce the restriction. SeeCleveland Baptist Assn. v. Scovil (1923), 107 Ohio St. 67; Brooks v.Orshoski (1998), 129 Ohio App.3d 386; Dean v. Nugent Canal Yacht Club,Inc. (1990), 66 Ohio App.3d 471, 475. Conversely, if the language is indefinite, doubtful, or capable of contradictory interpretation, a court must adopt that construction which least restricts the free use of the property. Houk v. Ross (1973), 34 Ohio St.2d 77, syllabus at para. 2. Thus in Bove v. Giebel (1959), 169 Ohio St. 325, the court declared in paragraph 1 of the syllabus:
 The general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate. (Paragraph two of the syllabus of Loblaw, Inc. v. Warren Plaza, Inc. [(1955)], 163 Ohio St. 581, approved and followed.)
In the instant case, Ormond asserts that the Washkewiczes' detached garage violated the deed restrictions in various respects. He first contends that the deed restrictions forbid the construction of detached garages. As support, he relies on paragraph 2 of the original declaration of restrictions, dated August 6, 1986, which provides:
 No dwelling shall be constructed on any Sublot in the Premises other than a one-family dwelling with a minimum of a two-car attached garage with side or rear entrance. A one-story, one-family dwelling shall contain at least two thousand six hundred (2,800) [sic] square feet of living space, exclusive of the garage, basement, and any porches and breezeways. A two-story or multiple level, one-family dwelling shall contain at least three thousand (3,000) square feet of living space, exclusive of the garage, basement, and any porches and breezeways. A two-story or split level, one-family dwelling shall have a minimum of one thousand six hundred (1,600) square feet on the first floor. (Emphasis added.)
Ormond additionally relies on paragraph 2 of the amendment to the original deed restrictions, dated January 28, 1988, which provides:
 As to Sublot No. 14 only, in the event a home is constructed in any area behind the lake thereon, then the owner or developer shall run the driveway along the northerly boundary line of said sublot and the garage to be attached to such dwelling shall face north. (Emphasis added.)
Ormond reasons that these references to "attached" garages evince an intent to prohibit the construction of a "detached" garage on an owner's lot. We do not agree.
First, nothing in the deed restrictions expressly prohibits the construction of a detached garage. The argument that references to "attached" garages in the original and amended restrictions implies that only attached garages may be constructed loses its force when we consider that paragraph 6 of the original restrictions refers to a garage generally, without specifying whether it is attached or detached. Paragraph 6 states:
 No tractors, trailers, trucks, boats, campers, or motor homes shall be stored on any Sublot unless such vehicles are kept in a garage, or in rear of house, out of sight of street and neighbors. Nor shall such vehicles be parked temporarily in open space on any Sublot for a period exceeding seventy-two (72) hours, unless in rear of property, out of sight and on an approved parking pad or base.
In any event, paragraph 2 in both the original and amended restrictions, at best, requires dwellings to have an attached garage. They do not forbid the construction of detached garages in addition to the garages that must be attached to the dwellings. Ormond has not identified any other language in the deed restrictions forbidding the construction of such a structure.
On the contrary, and as found by the court below, paragraph 9 of the original restrictions sanctions the construction of such a building. Paragraph 9 reads:
 Storage buildings or barns of any nature will be constructed of same material to match main dwelling or consist of such material to blend with and be compatible to main dwelling. Location of out building to be to rear or side of main dwelling, not in front, and no closer than 25 ft. from any side line, or 150 feet from rear line. Declarant must approve design and placement and receive a copy of approved plans and site location.
Ormond insists that a detached garage cannot be considered a "storage building" under paragraph 9, but a garage is plainly a building for storage. Indeed, paragraph 6 of the original restrictions expressly requires vehicles such as tractors, trailers, trucks, boats, campers, or motor homes to be "stored * * * in a garage" or otherwise kept out of sight. Contrary to Ormond's contention, we find nothing in the language of the restrictions prohibiting a detached garage and one paragraph that generally provides for it under a larger classification.
Ormond's reliance on Brooks v. Orshoski (1998), 129 Ohio App.3d 386, is misplaced. In that case, the restrictive covenant provided that "[a]ll structures shall be built by stick or panelized construction methods." Because a prefabricated home built off site and then transported to the owner's property violated the clear and unambiguous terms of the restrictive covenant, the court of appeals held that an injunction should issue barring the construction of such a prefabricated structure. In the instant case by contrast, there exists no such clear and unambiguous covenant barring construction of a detached garage.
Ormond alternatively contends that he was entitled to injunctive relief even if the Washkewiczes' detached garage qualified as a "storage building" under paragraph 9, because its location violated that paragraph's twenty-five foot side setback requirement. The violation of a sideline setback restrictive covenant may furnish grounds for injunctive relief. Compare Myers v. Smith (1960), 112 Ohio App. 169, cert. denied
(1961), 365 U.S. 843 (injunction granted because garage would have been located within the five-foot sideline setback) with Dougherty v.Fellabaum (1952), 71 Ohio Law Abs. 161 (injunction denied because garage not located within "free space" sideline setback).
In the case at hand, Ormond acknowledges that the base of the structure was located more than twenty-five feet from Ormond's property and, as found by the trial court, complied with paragraph 9. He nevertheless argues that because the eaves and gutter of the garage encroach on the twenty-five foot setback by at least one foot, the sideline setback was violated and an injunction should have issued. Ormond relies, however, on cases in which the structure was built within the setback. See, e.g.,Klubnik v. Granger Twp. Bd. of Zoning Appeals (Mar. 20, 1996), Medina App. No. 2465-M; unreported; Kelly v. Marsh (Mar. 6, 1989), Butler App. No. 88-06-079, unreported. We believe those cases are factually distinguishable because, as Ormond acknowledges, the base of the Washkewiczes' garage was located more than twenty-five feet from the sideline.
And even in those cases in which an eave to a building was located within a sideline setback, injunctive relief has been denied when the covenant violation was minimal, the violation was not deliberate, and the relative hardship to correct the violation would be disproportionate. See, e.g., Varner v. Aboussie (Okla. 1964), 397 P.2d 494; Gilpin v. JacobEllis Realties, Inc. (1957), 47 N.J. Super. 26, 135 A.2d 204; Smith v.Spencer (1913), 81 N.J. Eq. 389, 87 A. 158. In the instant case, the trial court could reasonably deny injunctive relief because any violation of the sideline setback was minimal, there is no indication that a violation was deliberate, and the relative hardship to the Washkewiczes to correct the violation would be disproportionate to whatever harm Ormond sustained by the violation.
Ormond next contends that the Washkewiczes' garage was built in front of their residence, in violation of paragraph 9 of the original deed restrictions. He asserts that the east wall of the detached garage is two to three feet closer to the street line than the southeast corner of the attached garage and that at least some portion of the detached garage is approximately ten feet in front of the Washkewiczes' dwelling. The trial court observed that the deed restrictions do not indicate the meaning of not in front in paragraph 9 and, applying the ordinary meaning of the words creating the restriction, found that the Washkewiczes' detached garage was not located in front of their main dwelling. We agree. Had paragraph 9 established a specific distance setback from the street, as it does for the side and rear, Ormond could argue that the structure was built in a prohibited location. But paragraph 9 contains no such language. Taking the words in their ordinary sense, the detached garage built by the Washkewiczes was not in front of their main dwelling.
Ormond additionally argues that the garage fails to comply with the high standards required by paragraph 3 of the original deed restrictions:
 For the purpose of insuring the development of the Premises as a residential area of high standards, no building, structure, or improvement whatsoever shall be constructed, erected, placed, located, or suffered to remain upon any Sublot unless and until the plans, including external design, dimension, and topographic location have been first approved in writing by Declarant and a true copy of such plans have been lodged permanently with Declarant.
Ormond does not dispute that a restrictive covenant requiring the consent of the developer or homeowners' association prior to construction is enforceable. See Providence Manor Homeowners Assn. v. Conner (1997),118 Ohio App.3d 895. In the case at bar, the trial court found that REHA had the responsibility to maintain and preserve the high standards of the Rollingbrook Estates and that REHA approved the Washkewiczes' plan. Ormond has not demonstrated that the trial court abused its discretion by concluding that he had not made a clear and convincing showing that the Washkewiczes' detached garage violated the deed restrictions.
Because we find no error by the court in denying Ormond's requests for injunctive relief, we overrule his first and second assignments of error. Ormond's third assignment of error states:
 III. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S AMENDED COMPLAINT AGAINST APPELLEE, THE CITY OF SOLON.
The majority overrules this assignment of error, although the writer would sustain this assignment of error in part.
Ormond's claim for damages against Solon for any act or omission in granting the Washkewiczes a variance was properly dismissed. Unless an exception applies,
 a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental * * * function.
R.C. 2744.02(A)(1). Governmental functions include
 [t]he provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures * * *.
R.C. 2744.01(C)(2)(p).
In Sudnik v. Crimi (1997), 117 Ohio App.3d 394, this court observed:
 R.C. 2744.02(A) grants a political subdivision and its employees immunity for the provision of inspection services by virtue of R.C. 2744.01(C)(2)(p). This immunity can be removed only if one of the five narrowly defined exceptions set forth in R.C. 2744.02(B) is applicable. Once immunity is removed, a political subdivision can assert the defenses listed in R.C. 2744.03(A) to restore immunity. * * * [T]he defenses and immunities provided in R.C. 2744.03(A) become relevant only once an exception to immunity applies.
Id. at 398-399.
In this case, Ormond's amended complaint alleged that Solon improperly granted a variance to the Washkewiczes and thereby caused damages to Ormond's property. Because actions taken by Solon in connection with its zoning code represent a governmental function, Solon is immune from damages under R.C. 2744.02(A)(1) unless an exception to immunity applies under R.C. 2744.02(B). Ormond has not identified any exception under R.C. 2744.02(B) that would deny Solon the immunity otherwise conferred by R.C. 2744.02(A)(1).
Ormond's reliance on Patton v. Cleveland (1994), 95 Ohio App.3d 21, is misplaced. In that case, an exception to immunity applied under R.C.2744.02(B)(3), and none of the defenses and immunities under R.C. 2744.03
restored the political subdivision's immunity. And even if there are circumstances when the discretionary immunity defense under R.C. 2744.03
is unavailable to the political subdivision such that liability could attach for negligence in implementing a policy, there must first exist a basis for liability under R.C. 2744.02(B) before the analysis may proceed to R.C. 2744.03. See Sudnik v. Crimi, supra. See, also, Opial v.Rossford (1996), 116 Ohio App.3d 588 (no basis for liability under R.C.2744.02(B), so R.C. 2744.03 inapplicable); Paul v. Moore (1995),102 Ohio App.3d 748 (no grounds for liability under R.C. 2744.02(B) and, consistently, no basis for liability for negligent implementation of policy under R.C. 2744.03). Because Ormond has not identified any grounds for liability under R.C. 2744.02(B), he could not overcome the immunity granted under R.C. 2744.02(A)(1). And without any grounds for liability under R.C. 2744.02(B), there is no occasion to even consider R.C. 2744.03. Accordingly, Ormond's damages claim against Solon was correctly dismissed.
This writer has much greater difficulty accepting the dismissal of Ormond's complaint to the extent it seeks declaratory and injunctive relief against Solon. Ormond's amended complaint alleged that Solon improperly granted the Washkewiczes a variance without providing Ormond notice or an opportunity to be heard, impairing his rights and interests and causing him damage. The trial court granted Solon's motion to dismiss Ormond's amended complaint pursuant to Civ.R. 12(B)(6). Before the court could dismiss Ormond's complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that Ormond could prove no set of facts entitling him to recovery. SeeO'Brien v. University Community Tenants Union (1975), 42 Ohio St.2d 242. The allegations in Ormond's amended complaint must be accepted as true. See York v. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143, 144.
Solon maintains that dismissal of Ormond's complaint was warranted for his failure to exhaust administrative remedies under R.C. Chapter 2506. Because this affirmative defense generally depends on matters not contained in the complaint, asserting the defense by way of a motion under Civ.R. 12(B)(6) is at least problematical. See Johnson v.Wilkinson (1992), 84 Ohio App.3d 509, 516 (trial court erred in granting Civ.R. 12(B)(6) motion for failure to exhaust administrative remedies based on material not contained in amended complaint). Acknowledging Ormond's allegation that it granted a variance without notice to Ormond, Solon answers that Ormond did not allege Solon failed to give notice of a public meeting under R.C. 121.22. Because Ormond does not deny such notice, Solon argues that Ormond had notice of the proceedings and thereafter failed to exhaust his administrative appeals.
This writer cannot accept Solon's argument. First, Solon has not demonstrated that there exists no set of facts entitling Ormond to relief, nor does it respond to Ormond's argument that he could obtain legal relief on these facts. Second, adjudicating Solon's affirmative defense that Ormond failed to exhaust his administrative remedies depends on matters outside of Ormond's complaint, including but not limited to whether the alleged notice of a public meeting was all the notice to which Ormond was entitled; whether administrative relief was available to Ormond after Solon granted a variance to the Washkewiczes, with or without notice to Ormond; and whether pursuit of administrative relief would have been futile. These are not questions that must necessarily be answered in Solon's favor merely by examining the allegations contained in Ormond's amended complaint. This writer does not say that a failure to exhaust administrative remedies is not a defense to Ormond's complaint, only that Ormond's amended complaint on its face does not furnish grounds to find that he failed to exhaust available administrative remedies.
This writer concludes that the trial court erred in dismissing Ormond's amended complaint against Solon to the extent Ormond sought declaratory and injunctive relief. However, the majority concludes that no remedy would be available for this alleged granting of a variance without a public meeting. Therefore, the majority affirms the trial court on this issue.
This writer believes, however, that a limited remedy is available to Ormond. This writer would have remanded the case for the court to determine whether any set of facts exists upon which Ormond could obtain legal relief against the City of Solon; whether Ormond is precluded from this action for failure to exhaust his administrative remedies; and whether any administrative remedies would have been available to him at any point of these proceedings. The courts are required to give liberal interpretation to pleadings and must construe the pleadings to provide an adequate remedy.
Ormond's failure to specify R.C. 121.22 in his complaint does not preclude relief if Solon had indeed failed to provide notice of its zoning meeting on the variance for the property adjacent to Ormond's. At a minimum, Ormond could be entitled to the $100 civil forfeiture fine,Danis Montco Landfill Co. v. Jefferson Twp. Zoning Commission (Montgomery Co. 1993), 85 Ohio App.3d 494, 499, and to attorney fees and costs, R.C.121.22(I)(2). See White v. Clinton County Bd. of Commissioners (1996),76 Ohio St.3d 416, 424. This writer therefore would sustain Ormond's third assignment of error in part. The majority, however, affirms the trial court.
Ormond's fourth assignment of error asserts:
 IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S RULE 59 MOTION TO AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW.
This assignment of error is not well taken.
Ormond contends the trial court erred in denying him a new trial for newly discovered evidence under Civ.R. 59(A)(8). Under that rule, a new trial may be granted for "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial * * *." Whether to grant or deny a new trial motion based upon newly discovered evidence rests within the sound discretion of the trial court and that ruling will not be disturbed on appeal unless the record affirmatively demonstrates that the trial court abused its discretion. See Patterson v. Ravens-Metal Products, Inc.
(1991), 72 Ohio App.3d 216, 232.
In this case, Ormond asserts that on March 31, 1999, after the trial court took evidence on his application for preliminary and permanent injunctive relief but before the court rendered its findings of fact and conclusions of law denying such relief, Ormond came into possession of a document entitled Appendix I to the Rollingbrook Estates Homeowners Association By-Laws.[4] To explain his failure to discover this evidence previously, Ormond says he made this inquiry of Pamela Washkewicz in deposition:
 Q. Do you know if the bylaws of the Rollingbrook Estates Homeowners Association has ever been changed from its original draft to today?
A. Not to my knowledge.
We do not believe Ormond has adequately explained his failure to discover and submit the document prior to the court's decision. The court permitted Ormond to engage in expedited discovery entitling him to depose Mrs. Washkewicz and "a representative of the Rollingbrook Estates Homeowners Association," with each deponent to produce "all documents which refer or relate to the Association's consideration of the Washkewicz's plans to build a detached garage." It does not appear, however, that Ormond ever took the deposition of a designated representative of REHA pursuant to Civ.R. 30(B)(5). Nor is there any indication that Ormond sought such discovery from REHA. In any event, Ormond does not suggest that his failure to obtain this document was the result of any failure by REHA to respond to a discovery request.
The trial court could reasonably conclude that Ormond did not show that this document was one which, with reasonable diligence, he could not have discovered and produced at trial. With no indication that REHA authorized Mrs. Washkewicz to speak as the representative of REHA, Ormond's inability to obtain discovery from the wrong party does not excuse his failure to seek discovery from the right party. Because the trial court's order was not unreasonable, arbitrary, or unconscionable, we see no reason to disturb that ruling on appeal.
This writer would reverse the judgment dismissing Ormond's claims for declaratory and injunctive relief against the City of Solon, remand the matter for further proceedings, and affirm the remainder of the trial court's judgment. Because the majority of this panel sees no available remedy, the majority rejects any remand. In accordance with the majority's ruling, therefore, this court affirms the entire decision of the trial court.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, J., CONCURS IN JUDGMENT ONLY;
 MICHAEL J. CORRIGAN, J., CONCURS IN JUDGMENT ONLY.
[1] The Washkewiczes modified their original building plans after their building application was approved, but the modifications did not constitute material alterations. The modifications did not alter the materials or overall size of the structure. The revised plans had been shown to REHA and Solon, and neither objected to the minor variations for the original plans.
[2] Ormond was later granted leave to amend the complaint to add claims for monetary damages.
[3] On August 4, 1999, this court granted Solon's motion to dismiss Ormond's appeal as untimely. On September 17, 1999, the court granted Ormond's motion for reconsideration, vacating the order entered on August 4, 1999 and referring Solon's motion to the merit panel. On review of the record, we conclude Ormond timely moved for a new trial under Civ.R. 59(B) on April 20, 1999, and the trial court denied Ormond's motion on April 26, 1999. App.R. 4(B)(2) provides that if a party in a civil case files a timely motion for a new trial under Civ.R. 59(B), "the time for filing a notice of appeal begins to run as to all parties when the order disposing of the motion is entered." (Emphasis added.) Ormond's appeal from the April 26, 1999 order was timely under App.R. 4(B)(2). We therefore overrule Solon's motion to dismiss the appeal, Motion No. 07435.
[4] Ormond filed this document with the court on April 9, 1999, the same date on which the court rendered its findings of fact and conclusions of law.