**Dean**
**v.**
**Nugent Canal Yacht Club**
*[Cite as 2 AOA 299]*

*Case No. OT-89-16*
*Ottawa County, (6th)*
*Decided March 16, 1990*

*Mr. Terrence R. Rudes, Counsel for Appellants.*

*Messrs. John A. Coppeler and George C. Wilber, Counsel for Appellees.*

HANDWORK, P.J.

This matter is before the court on appeal from the judgment of the Ottawa County Court of Common Pleas dated March 31, 1989, wherein the trial court granted summary judgment in favor of defendant-appellee, Nugent Canal Yacht Club.

Appellants, Joseph Dean and others, sought an injunction against appellee, Nugent Canal Yacht Club (the "Club"), to prohibit use of lots thirty-one and thirty-two in Plat Nine of Nugent's Canal Point Subdivision by the Club for social gatherings. In 1964, the Club purchased a parcel of land in the subdivision from Vincent H. Nugent and Agnes D. Nugent for purposes of building a club house. In 1968, the Club acquired lots numbered thirty-one and thirty-two in the same subdivision from the Nugents. This deed was subject to a Declaration of Restrictions recorded by the Nugents in 1965. The Declaration of Restrictions provided in pertinent part that:

"1. Said premises shall be used solely and exclusively for single family residence purposes. Upon each lot there shall be erected not more than one such single family residence, a private garage and/or boathouse.***

"2. All commercial activities of any type in said subdivision are reserved by the grantors, their heirs and assigns, however, rental of the residence in paragraphs 1 above shall not be considered as a violation of this restriction.
"***

"7.*** No nuisance, and no gas or oil derrick, advertising sign, bill board or other advertising device shall be erected, placed or suffered to remain upon said premises, nor shall the premises be used in any way for any purpose which may endanger the health, or unreasonably disturb the quiet, of any holder of adjacent land. No spirituous, vinous or fermented liquors shall be manufactured or sold, either at wholesale or retail upon said premises."

Since 1968, the Club has used lots thirty-one and thirty-two for occasional outdoor functions and has placed tents on the property for such use. In July 1987, the Club constructed a shelter house on lots thirty-one and thirty-two for use in connection with more regular social gatherings. In October 1987, appellants' brought this action against the Club and also the Nugent Canal Property Owners Association because appellants were disturbed by the increase in the volume of activities, the additional lighting to the area, and the noise caused by the people and music.

Following the filing of cross motions for summary judgment, the trial court found that appellees were entitled to partial judgment. The court held that the construction of the shelter house was not a violation of the restrictions because the shelter was not used for commercial purposes.

Furthermore, the court held that appellants' claim that the use of the lots for social gatherings violated the restrictions was barred by the doctrine of laches. Summary judgment was denied with regard to the issue of whether the current use of the property disturbed the quiet of adjacent land owners and, therefore, violated paragraph seven of the Declaration of Restrictions.

The court added that there was no just reason why its judgment granting summary judgment in favor of appellees should not be entered as a final order. Therefore, appellants sought an immediate appeal of this judgment to this court and assert on appeal the following assignments of error:

1. "The Court erred it [sic] its construction of the wording of the restrictions contained in the deed to the subject property.

2. "The Court erred in finding that Plaintiffs are guilty of laches as to the Yacht Club's use of the two lots for Yacht Club purposes.

3. "The Court erred in finding that the erection of a forty foot by seventy foot shelter house on a lot containing a deed restriction that stated 'upon each lot, there shall be erected not more than one such single family residence, a private garage and/or boat house' did not violate said restriction.

4. "The Court erred in finding that the use of Lots 31 and 32 for Yacht Club purposes does not violate the restriction that 'said premises shall be used solely and exclusively for single family residence purposes.'

5. "The Court erred in finding that the Yacht Club's activities are not a business or commercial. [sic]

6. "The Court erred in balancing the equity between the parties."

Summary judgment, as provided for in Civ. R. 56(C), is an appropriate means to terminate litigation before trial where there is nothing to try. *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 2. To determine whether summary judgment is proper, a three-part test must be satisfied: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66.

We have consolidated appellants' first, third, and fifth assignments of error because they present a single issue: Does the construction of the shelter house on lots thirty-one and thirty-two for the Club's social gatherings violate the Declaration of Restrictions?

It has been repeatedly held by the Supreme Court of Ohio that "[w]here the language contained in a deed restriction is indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land. (*Hunt* v *Held*, 90 Ohio St. 280; *Frederick* v. *Hay*, 104 Ohio St. 292, approved and followed.)" *Houk* v. *Ross* (1973), 34 Ohio St. 2d 77, paragraph two of the syllabus, overruled on other grounds by *Marshall* v. *Aaron* (1984), 15 Ohio St. 3d 48. Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction. *Cleveland Baptist Assn.* v. *Scovil* (1923), 107 Ohio St. 67, 72. The key issue is to determine the intent of the parties as reflected by the language used in the restriction. *Larwill* v. *Farrelly* (1918), 8 Ohio App. 356, 360.

The trial court below held that appellants' claim that the use of the property violated the restrictions was barred by the doctrine of laches. It did not determine whether the use did, in fact, violate the restrictions. Therefore, we will address only the issue of whether the construction of the shelter house violated the restrictions.

The trial court held that the Club's shelter house did not violate the restrictions relying on *Hunt* v. *Held* (1914), 90 Ohio St. 280. In the *Hunt* case, the court held that a restriction barring the use of property for other than residential purposes did not bar the use of the property to construct an apartment house. The *Hunt* court interpreted the word "residence" as referring to the type of use and not the type of structure. Therefore, the trial court below interpreted the restrictions as barring a commercial structure and not a shelter house built by a non-profit organization.

Upon a review of the Declaration of Restrictions, we find that the emphasis is not upon whether the use of the premises is for commercial or non-commercial purposes. Rather, the grantors' intention was that the property be used solely for the common activities of a single family. While the phrase "single family" may be subject to interpretation as to what constitutes a single family, the most liberal generalization of the term would be that it refers to a social unit of people which reside in a single household. An organization created by the state as a legal entity with a principal place of business, however, cannot be classified as a single family.

Therefore, since it is undisputed in this case that the Club is using the shelter house for social gatherings, and such use does constitute a violation of the Declaration of Restrictions as a matter of law, reasonable minds could only conclude that the shelter house must be found to be a violation of the restrictions because it is not being utilized by a single family for residential purposes. Consequently, appellees were not entitled to summary judgment. On the other hand, however, appellants are entitled to summary judgment.

Therefore, we find appellants' first, third, and fifth assignments of error well-taken.

In their fourth assignment of error, appellants argue that the court erroneously found that the use of the lots did not violate the Declaration of Restrictions. Since the court held that appellants' claim that the Club's use of lots thirty-one and thirty-two was barred by the doctrine of laches, the court never found whether there was, in fact, any violation. Therefore, appellant's fourth assignment of error is not ripe for review. For this reason, we find appellant's fourth assignment of error not well-taken.

Appellants argue in their second and sixth assignment of error that the court improperly

applied the doctrine of laches to bar their claim that the Club's use of the lots violated the restrictions.

Laches is an equitable defense to an action where the plaintiff failed to assert their rights for an unreasonable and unexplained length of time and under such circumstances that the adverse party was prejudiced by the delay. *Connin* v. *Bailey* (1984), 15 Ohio St. 3d 34, 35. For the doctrine of laches to apply, the defendant must have shown that there was a delay in asserting a right and that the defendant was materially prejudiced by that delay. *Thirty-Four Corp.* v. *Sixty-Seven Corp.* (1984), 15 Ohio St. 3d 350, paragraph two of the syllabus.

Appellees assert that the initial violations of the restrictions began in 1968 and that they relied upon appellants' acquiescence to the violation of the restrictions when they expended a significant amount of money in building the shelter house on the lots to continue the use of the property for Club gatherings. Appellants, on the other hand, contend that the Club's use of the property for occasional social functions was an insignificant violation and that they should not be foreclosed from enjoining a more extensive violation. In support of this argument, appellants presented evidence that various lot owners were not disturbed by the Club's activities on the lots until 1987 when the shelter house was built and the parties became more numerous. Appellants also argue that the Club was not materially prejudiced by appellants' failure to bring this action earlier because the Club knew that they were in violation of the restrictions.

Based upon the undisputed evidence presented in this case that the character and quantity of violations significantly changed in 1987, we find that reasonable minds would not have expected appellants to bring an injunction action against the Club for the violations of the restrictions which began in 1968. Some of the lot owners attested that the Club's use of the lots at that time did not disrupt the quiet enjoyment of their own property. However, the same lot owners state that they were bothered by the use of the Club's use of the lots in 1987 after the shelter house was built and the gatherings became more frequent. When the Declaration of Restrictions is read as a whole, it reflects the intent of the grantors to preserve the peace and quiet of the subdivision by placing restrictions on the use of the property. Therefore, reasonable minds could only conclude that it was reasonable for appellants to overlook the minor violations which occurred prior to 1987. See *McGuier* v. *Caskey* (1900), 62 Ohio St. 419, 426-427.

We further find that reasonable minds could only conclude that appellees were not prejudiced by appellants' failure to bring this action prior to 1987 because the Club's act of building the shelter, increasing the use of the lots, and changing the character of the use were so significantly different from the earlier violations that it was not reasonable for the Club to rely on appellants' acquiescence regarding past violations. Because the Club knowingly changed its use of the lots from a minor violation to a outright disregard for the restrictions, it was unreasonable for the Club to rely on appellants' failure to enforce their rights as to the minor violations. Thus, the Club's expenditure of approximately $18,000 to construct the shelter house does not by itself establish that it was materially prejudiced by appellants' failure to bring an action to enforce the restrictions before 1987.

Wherefore, we find that laches is inapplicable in this case. Therefore, appellants' second and sixth assignments of error are found well-taken.

Having found that substantial justice has not been done the party complaining, the judgment of the Ottawa County Court of Common Pleas is reversed. Since we found that appellants are entitled to summary judgment regarding the issue of whether the construction of the shelter violates the Declaration of Restrictions and appellants' motion for summary judgment filed in the trial court requested that such a finding be made, we hereby render judgment in appellants' favor with regard to this issue pursuant to the authority granted to us under App. R. 12(B). With regard to the issue of whether the use of the lots for social gatherings violates the restrictions, we reverse the trial court's finding that laches bars appellants from raising this claim. This case is remanded to the lower court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

PETER M. HANDWORK P.J.
CHARLES D. ABOOD, J. Concur.

Prior to his death, JUDGE JOHN J. CONNORS, JR., did participate in the decision-making process of this case.