**BROOKS, Appellant, et al.,**

v.

**ORSHOSKI et al., Appellees.**

[Cite as *Brooks v. Orshoski* (1998), 129 Ohio App.3d 386.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–98–002.

Decided Aug. 14, 1998.

*Andrea M. Brooks, pro se.*

*Gary A. Kohli,* for appellees.

MELVIN L. RESNICK, Judge.

This case comes before us on appeal from a judgment of the Ottawa County Court of Common Pleas, which dismissed appellant's declaratory judgment action and application for a permanent injunction.

In October 1996, the grantors, Ronald D. Krieger and Margie A. Krieger, recorded the plat of Oak Run Subdivision located in Oak Harbor, Ottawa County, Ohio. In November 1996, the Kriegers filed a "Declaration of Protective

Covenants," setting forth "covenants, conditions, restrictions and easements" applicable to Oak Run. The covenant material to this case reads:

"3.5 All structures shall be built by stick or panelized construction methods."

Oak Run is divided into twelve lots. Appellant, Andrea M. Brooks, and her husband, Timothy J. Brooks, purchased Lot No. 9 in Oak Run in June 1997 and constructed a residence on the property. Subsequently, two other lots in the subdivision were sold. In September 1997, appellees, Paul R. Orshoski and his wife, Tevon A. Orshoski, purchased Lot No. 1. In November 1997, Thomas A. Harvey and his spouse, Tracy E. Harvey, purchased Lot No. 2.

Appellant's new residence was built, on site, by the traditional method. She and her family moved into their new home in November 1997. The Harveys also began the construction of a house on their lot.

Appellees, however, elected to place an "industrialized home" on Lot No. 1. As opposed to the traditional method of constructing a new house on site, most of the construction of an industrialized home occurs in a factory. The specific brand of house purchased by appellees, All American Homes, consists of four sections that are constructed piece-by-piece at the manufacturers. The four sections are then transported to the purchaser's property, where they are placed on a previously prepared foundation and joined.

In the present case, appellees first built a basement on their new property. The delivery of their new residence was set for December 18, 1997. After the house was installed on the property, an attached garage and a porch running along the front of the house were to be erected.

However, in October 1997, appellant learned of the method by which the Orshoskis were constructing their new home. Appellant was of the opinion that this method of construction was prohibited by Section 3.5 of the Declaration of Protective Covenants.

After speaking with Paul Orshoski and holding a meeting to express her concerns regarding appellees' alleged violation of the covenant, appellant and her husband, as well as Thomas and Tracy Harvey, filed suit against appellees. The plaintiffs asked the trial court to declare the rights of the parties under the protective covenant and to enforce the covenant. Plaintiffs further requested a permanent injunction enjoining appellees "from erecting and/or maintaining any building or structure on their lot within the Subdivision in violation of the Declaration." Plaintiffs also filed a motion for an *ex parte* temporary restraining order and a preliminary injunction.

On December 3, 1997, the trial court granted the plaintiffs' motion for a temporary restraining order. Plaintiffs were also ordered to post a $50,000 bond

or, in the alternative, $5,000 in cash, cashier's check, or money order. Andrea Brooks posted a $5,000 cash bond.

A combined hearing on the request for preliminary and permanent injunctions was held on December 9 and December 10, 1997. The court bifurcated the declaratory judgment action and the injunctive action so that appellees would have time to file an answer. Nevertheless, the sole issue before the court in the injunctive action was a determination of the parties' rights under Section 3.5 of the Declaration of Protective Covenants. Therefore, the court was required to determine the meaning of "structures * * * built by stick or panelized construction methods."

In a judgment entry dated January 7, 1998, the trial court made the following relevant findings of fact:

"9. The dwelling unit in question was assembled at the business of 'All American Homes' and is scheduled to be delivered to Defendant–Owners' lot in four (4) separate sections for final on-site assembly and finish detail work.

"* * *

"12. The adjective 'stick-built' as used in the sentence 'All structures shall be built by stick or panelized construction methods' means 'of a house or other structure built piece-by-piece *at the construction site,* as opposed to factory-built.' (Emphasis added.) Random House Unabridged Dictionary, Second, 1993, page 1896. Plaintiffs' Exhibit 6."

The court concluded that the plaintiffs' assertion that a stick-built house must be one constructed on site, as opposed to a house partially or completely assembled in a factory, was a "distinction without a difference." Accordingly, the trial court held:

"(G) Any reasonable finder of fact, judge or jury, viewing Defendants' Exhibit C [a videotape demonstrating the construction of All American Homes], reading the various exhibits referred to in the Findings of Fact above, and digesting the totality of evidence presented at hearing must conclude the absence of a meaningful difference between a 'stick-built house' assembled on site, vis-a-vis a 'stick-built house' built in a factory, unless it is to conclude the factory-built house is a better final product."

On January 13, 1998, appellees filed a motion requesting a hearing for the purpose of assessing damages and the payment of attorney fees against the $5,000 cash bond posted by Andrea Brooks. On that same day, plaintiffs filed a motion for a return of the $5,000 or, in the alternative, the assessment of damages, if any. After holding the hearing, the trial court entered an "order," dated January 30, 1998, finding that appellees' attorney fees and expert witness fees were reasonable and "necessarily incurred in procuring the dissolution of the

injunction" and held that appellees were entitled to recover those fees and costs, as well as the costs of the proceeding. The court ordered appellees' attorney to prepare an appropriate judgment entry. A review of the record discloses that such a judgment entry was never filed and journalized.

Andrea Brooks filed, *pro se,* a timely appeal from the trial court's January 7, 1998 and from the January 30, 1998 entries. She sets forth the following assignments of error:

"1. The trial court erred when it applied the concept of 'distinction without a difference' to the plain, ordinary and unambiguous meaning of the words used in the applicable restrictive covenant.

"2. The trial court erred in finding that the record evidenced appellees' dwelling unit was assembled.

"3. The trial court abused its discretion in denying appellants' [*sic*] for a permanent injunction.

"4. The trial court abused its discretion by failing to render a declaratory judgment.

"5. The trial court committed error when it failed to properly apply the law in awarding damages against the bond."

Appellant's first and third assignments of error are interrelated and shall be considered together. In these assignments, appellant argues that the trial court erred in finding a "distinction without a difference" in her argument about the ordinary and unambiguous meaning of the language of Section 3.5. She further asserts that the trial court abused its discretion in denying plaintiffs' request for a permanent injunction.

We must first review the rules of construction for restrictive covenants. These rules are based on the principle that restrictions on the free use of land are disfavored. *Benner v. Hammond* (1996), 109 Ohio App.3d 822, 826, 673 N.E.2d 205, 207. As a result, when a covenant's language is indefinite, doubtful, and capable of contradictory interpretations, courts are to construe the covenant in favor of the free use of land. *Id.* However, courts must enforce a restriction where it is clearly and unambiguously found in a covenant. *Dean v. Nugent Canal Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 556–557.

The goal of interpreting the language of the restrictive covenant is the determination of the intent of the parties as reflected by the language used in the restriction. *Hitz v. Flower* (1922), 104 Ohio St. 47, 57, 135 N.E. 450, 453–454; *Dean v. Nugent Canal Yacht Club, Inc.,* 66 Ohio App.3d at 475, 585 N.E.2d at 556–557. The court must construe the language of the restriction by giving it its common and ordinary meaning, *Devendorf v. Akbar Petroleum Corp.* (1989), 62

Ohio App.3d 842, 845, 577 N.E.2d 707, 708–709, and read the restrictive covenants as a whole to ascertain the intent of the creator(s), *LuMac Dev. Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 565–566, 573 N.E.2d 681, 685–686.

The sole issue before this court is the meaning of the sentence "All structures shall be built by stick or panelized construction methods." In using the disjunctive "or," the declarant intended to limit the construction of structures in Oak Run to one of two alternatives, either the "stick" method or the "panelized" method. Whether the home ordered by appellees involves the "panelized" construction method is not a question raised by either of the parties. Accordingly, we shall address only the meaning of the phrase "built by stick construction method."

Appellant offered the only definition of the "stick-built" method of construction, as found in Random House Unabridged Dictionary (2 Ed.1993) 1869. As set forth previously, that definition specifically excludes structures that are built in a factory and then placed on a lot. Appellees' two experts also agreed that the "stick" method involved constructing a structure, such as a home, "piece-by-piece" on a lot. Nonetheless, both experts also stated that an industrialized house is also constructed piece-by-piece, differing only in the location in which it is constructed. Based on this testimony, the trial court determined that the location in which a house is built is a distinction without a difference. We cannot agree.

The language of the restriction is clear and unambiguous in stating an intent to preclude the construction of any type of prefabricated structure, built off site and then transported to the owner's property. A perusal of the restrictive covenants as a whole supports this position. Section 2 of the Declaration of the Protective Covenants states the following purposes of the restrictions:

"(a) The compliance with all zoning and similar governmental regulations.

"(b) The promotion of health, safety and welfare of all Owners and residents of the Property.

"(c) The preservation, beautification and maintenance of the Property and all Improvements.

"(d) The preservation and promotion of environmental quality.

"(e) The establishment of requirements for the development of the property relating to land use, architectural features and site planning."

Each protective covenant in the Declaration, for example, height restrictions for homes and requiring concrete driveways and attached garages, furthers the

purpose of the covenant and expresses an intent to plan, develop, and maintain a particular type of subdivision.

Furthermore, the allowance of the "panelized" construction method supports an intent to prohibit the building of industrialized homes in Oak Run. The panelized method of construction means "composed of prefabricated sections of walls, floors, or roofs that can be assembled at the building site." Random House Unabridged Dictionary, *supra*, at 1401. By allowing construction of houses using prefabricated *sections* of walls, etc., the grantors expressed an intent to bar from the subdivision structures that are wholly fabricated in a factory. That is, by including the panelized method, the grantors excluded the "industrialized home" method of construction.

We are fully aware of the fact that appellees knew of Section 3.5 prior to purchasing Lot No. 1 in Oak Run and that they therefore consulted with Mr. Krieger on the issue of whether their chosen "All American Home" complied with this protective covenant. This court is also cognizant of the fact that Krieger had no knowledge of the existence of industrialized homes at the time the declarations were created and that he told appellees that such a structure was not prohibited by the restrictions. We are, however, construing a written instrument and are concerned only with the intent of the Kriegers, as expressed through the language of that instrument, at the time the document was created. As stated previously, that language is clear and unambiguous. Accordingly, the Kriegers' after-the-fact beliefs would be relevant only if the restriction was ambiguous. *Baker v. Lewis* (July 26, 1993), Brown App. No. 92–10–014, unreported, 1993 WL 282678. Therefore, the trial court erred in finding that, under the terms of a Section 3.5 of the Declaration of Protective Covenants, piece-by-piece construction of a structure on site was indistinguishable from piece-by-piece construction of a structure in a factory.

Due to the manner in which the trial court bifurcated this case, both the parties and the court indicated that the plaintiffs were required to demonstrate irreparable harm, the standard employed in most cases requesting injunctive relief, before the restrictive covenant could be enforced. We find that, in such a case, a showing of irreparable or actual harm is unnecessary. *Catawba Orchard Beach Assn., Inc. v. Basinger* (1996), 115 Ohio App.3d 402, 407, 685 N.E.2d 584, 587–588.

The trial court actually determined the declaratory judgment action by deciding the rights of the parties under the Declaration of Protective Covenants, Section 3.5. If clear and unambiguous, the restriction is enforceable. For an order enjoining appellees' proposed construction of their house on Lot No. 1. Oak Run Subdivision, the plaintiffs were required to establish only that "such covenant restricting the use of lands of another was intended to be for [their] benefit,

and that [they have] an equitable interest in the other person's adherence to the covenant," that is, that plaintiffs had standing to seek enforcement of the covenant. *Berger v. Van Sweringen Co.* (1966), 6 Ohio St.2d 100, 102, 35 O.O.2d 127, 128, 216 N.E.2d 54, 56–57. It is undisputed that the Declaration of Protective Covenants was intended for the benefit of appellant and that she has an equitable interest in appellees' adherence to Section 3.5. Consequently, the common pleas court was required to enjoin the construction of an industrialized home on Lot No. 1, Oak Run Subdivision.

Appellant's first and third assignments of error are found well taken.

Appellant's second and fourth assignments of error are rendered moot by this court's disposition of her first and third assignments of error.

■ This court lacks the jurisdiction to consider appellant's fifth assignment of error for lack of a final, appealable order.

■ The trial court's decision issued on January 30, 1998 is not a final judgment. Where a court enters an order stating that the prevailing party should prepare a judgment entry in accordance with the court's order, the latter is an announcement of the court's decision and not the court's final judgment. *St. Vincent Charity Hosp. v. Mintz* (1987), 33 Ohio St.3d 121, 123, 515 N.E.2d 917, 919; *Gibson v. Gibson* (1993), 87 Ohio App.3d 426, 433–434, 622 N.E.2d 425, 429–430.

In the case at bar, the trial court's order of January 30, 1998 directed counsel for appellees to prepare an appropriate judgment entry. Accordingly, the January 30, 1998 order was merely a pronouncement of the court's finding, and is, therefore, not a final judgment under Civ.R. 58. Lacking a final judgment on the assessment of damages, attorney fees and costs, this court must dismiss appellant's appeal of the January 30, 1998 order.

The January 7, 1998 judgment of the Ottawa County Court of Common Pleas is reversed, and this cause is remanded to that court for entry of a judgment enforcing Section 3.5 of the Declaration of Protective Covenants. The appeal of the January 30, 1998 order of the trial court is hereby dismissed. Appellees are ordered to pay the costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER, J., concurs.

KNEPPER, J., dissents.

KNEPPER, Judge, dissenting.

I must respectfully dissent from the finding of the majority. I agree with the trial court's finding of "a distinction without a difference" on the facts of this case. I further believe that the language in Section 3.5 of the restrictive covenants was indefinite, doubtful, and capable of contradictory interpretations and therefore should be interpreted in favor of the free use of land.