OPINION
This case presents the question of whether appellee, KIR Huber Heights, L.P. ("KIR"), is likely to succeed on the merits of its claim to enforce a restrictive covenant against appellants, Lucas Liakos and Scott Conrad (collectively referred to as "Liakos"). The covenant precludes Liakos from selling, renting, or exhibiting pornographic material. We conclude that the restriction prohibits Liakos from operating an adult bookstore on the property located adjacent to Northpark Shopping Center. Accordingly, the trial court's grant of injunctive relief to KIR was proper and its judgment is Affirmed.
 I
KIR is the owner of an approximately 310,000 square-foot (underroof) shopping center in the city of Huber Heights, Montgomery County, Ohio, doing business as Northpark Shopping Center ("Parcel A"). Liakos owns a 0.725 parcel adjacent to the shopping center ("Parcel B"), where Liakos intends to operate an adult bookstore known as Total Xposure.com ("business").
Wildcat Development Limited Partnership ("Wildcat") was the original owner of Parcel A, which KIR now owns. Elizabeth Adler was the original owner of Parcel B, which Liakos now owns. Adler and Wildcat entered into a Non-Compete/Restrictive Covenants and Maintenance Fee Agreement ("Agreement"). Among other things, they agreed to a restriction prohibiting the renting, selling, or exhibiting of pornographic material. The Agreement was recorded in the Montgomery County Recorder's Office on August 30, 1994. Liakos is a successor in interest to Adler under the Agreement, and the deed by which he took ownership of the property provided that he took the premises subject to "restrictions, conditions and easements of record."
In August 2000, Liakos began operating the business. Shortly after the business opened, two civil actions were filed to prevent Liakos from operating the business. In City of Huber Heights v. Liakos (July 13, 2001), Montgomery App. No. 18547, unreported, we affirmed the trial court's decision to strike down Huber Heights' sexually oriented business statute. While Liakos may have won the battle against the city, it seems that he may have lost the war. In the present action, KIR claims that Liakos sold, rented, and exhibited pornographic material in direct violation of the Agreement and requests a permanent injunction to prohibit the business' operation. The trial court agreed, finding that the restrictive covenant applied to Liakos' property and prevented the operation of an adult bookstore. As a result, the trial court granted the injunction. From that decision, Liakos now appeals.
 II
Liakos' raises two assignments of error for our consideration:
 THE TRIAL COURT ERRED WHEN IT FOUND THAT THE PARCEL OF REAL ESTATE OWNED BY APPELLANTS WAS SUBJECT TO THE USE RESTRICTION WHICH PLAINTIFF KIR HUBER HEIGHTS LLP WAS SEEKING TO ENFORCE
 THE TRIAL COURT ERRED WHEN IT DETERMINED THAT LANGUAGE IN THE USE RESTRICTION WHICH PROHIBITED THE SALE OF "PORNOGRAPHIC MATERIAL" WAS NOT VAGUE OR AMBIGUOUS
Before we address these assignments of error, we note that this case involves the propriety of injunctive relief. The standard for granting an injunction under Civ.R. 65 involves an analysis and balancing of four factors: whether (1) the moving party is likely to succeed on the merits of its claim, (2) there is a certain and immediate threat of irreparable harm absent such relief, (3) the potential injury suffered by the moving party absent the relief outweighs the injury suffered by the parties enjoined or other, and (4) maintaining the status quo between the parties will serve the public interest. Corbett v. Ohio Bldg. Auth. (1993), 86 Ohio App.3d 44, 49, 619 N.E.2d 1145, 1148. Absent an abuse of discretion, which implies that the trial court's decision was unreasonable, arbitrary, or unconscionable, we will not reverse an award of injunctive relief. Beta Laser Mike, Inc. v. Swinchatt (Mar. 10, 2000), Montgomery App. No. 18059, unreported (internal citations omitted).
With these standards in mind, we now consider the assignments of error.
 A
In the first assignment of error, Liakos claims that issuance of the permanent injunction was erroneous because the restrictive covenant is ambiguous and does not apply to Parcel B. Accordingly, Liakos claims that the trial court ignored established Ohio precedent by resolving all doubts and ambiguities in favor of increasing the reach of the restrictive covenant and subjecting Parcel B to the restriction. We disagree.
Restrictions on the free use of land are disfavored. Driscoll v.Austintown Assoc. (1975), 42 Ohio St.2d 263, 276-77, 328 N.E.2d 395,404. However, a court must enforce clear, unambiguous restrictions found in a covenant. Dean v. Nugent Canal Yacht Club, Inc. (1990),66 Ohio App.3d 471, 475, 585 N.E.2d 554, 557.
The real issue in this case is whether the restrictive covenant is ambiguous. If the covenant's language is indefinite, doubtful, and capable of contradictory interpretations, then the court must construe the covenant in favor of the free use of land. Houk v. Ross (1973),34 Ohio St.2d 77, 296 N.E.2d 266, 274. We are guided by the principle that the goal of interpreting the language of the restrictive covenant is to determine the intent of the parties as reflected by the language used in the restriction. Hitz v. Flower (1922), 104 Ohio St. 47, 57,135 N.E. 450, 453-454; Maasen v. Zopff (July 26, 1999), Warren App. Nos 98-10-135, 98-10-138, 98-12-153, unreported (internal citations omitted).
A perusal of the Agreement as a whole supports the trial court's determination that the restrictive covenants of Exhibit C are not ambiguous and apply to Parcel B. As a successor in interest, Liakos is bound by the mutual restrictions entered into by Adler. Among other things, these restrictions on the use of Parcel B state:
 ADLER agrees to comply with and not violate any of the restrictive conditions, including restrictions pertaining to types of uses not permitted on Parcel B, set forth in Exhibit "C", attached hereto and made a part hereof. ADLER acknowledges and understands that said Exhibit "C" restrictive conditions are restrictions contained in existing agreements between Wildcat and one or more tenants in Northpark Center.
(Emphasis added.)
Exhibit C states:
 Landlord shall not . . . at any time permit any occupant of space in the Shopping Center to: . . . (iii) use or permit the use of any portion of such space for any of the uses set forth in EXHIBIT I attached hereto. . . .
Further, Exhibit I provides:
 The Shopping Center shall not be used in whole or in part for any of the following purposes: . . . (k) Selling, renting or exhibiting pornographic material. . . .
The parties chose language that demonstrates a clear intent to apply the use restrictions of Exhibit C to Parcel B — including those conditions that would not otherwise apply. This is reflected by the above language which clearly includes (1) restrictions specific to Parcel B; and (2) restrictions that apply to other tenants. These restrictions are set out in Exhibit C. They include Exhibit I's restriction on "selling, renting or exhibiting pornographic material." If the only restrictions that applied to Parcel B were those listed as specifically applying to the parcel, then the parties would not have needed to include the language "including restrictions pertaining to types of uses not permitted on Parcel B." Accordingly, we agree with the trial court that the restrictive covenant applies to Liakos' property. Thus, Liakos' first assignment of error is overruled.
 B
In the second assignment of error, Liakos asserts that even if the restriction applies, it is still unenforceable against the business because the term "pornographic material" is ambiguous. Apparently, Liakos feels that the term is ambiguous because it has no legal definition and numerous dictionary definitions. We disagree with this contention.
As we stated above, courts must enforce unambiguous restrictions. In construing restrictive covenants, courts determine the meaning of words based upon their ordinary meaning — often looking to dictionaries to define a term. Houk, supra. Webster's II New College Dictionary (1995) 860 defines pornography as "[t]he presentation of sexually explicit behavior, as in a photograph, intended to arouse sexual excitement." We have reviewed two video tape exhibits (Exhibits 17 and 18) sold at the business and conclude that these items are pornographic material. Both tapes present sexually explicit behavior including vaginal and anal intercourse, fellatio, cunnilingus, masturbation, group sex, and lesbianism. Certainly, some, if not all, of these images found in Exhibits 17 and 18 were intended to arouse sexual excitement. Thus, the restrictive covenant must be applied against operation of this business.
 C
Alternatively, Liakos argues that the restriction cannot be applied because it violates the First Amendment. Again, we disagree. The First Amendment does not protect speech rights against interference or impairment by private individuals, but instead only against state action that interferes with an individual's constitutionally protected rights.Lloyd Corp., Ltd. v. Tanner (1972), 407 U.S. 551, 567, 92 S.Ct. 2219,2228, 33 L.Ed. 2d 131; Eastwood Mall, Inc. v. Slanco (1994),68 Ohio St.3d 221, 223, 626 N.E.2d 59, 61. Liakos claims the shopping center is engaged in state action because it is substantially devoted to public uses. Alternatively, Liakos argues judicial enforcement of the covenant by a court is state action under Shelley v. Kraemer (1948),334 U.S. 1, 68 S.Ct. 836, 92 L.Ed.2d 1161. Thus, we are precluded from enforcing the use restriction found in the Agreement even if it otherwise applies. Both assertions are incorrect.
The shopping center is not engaged in state action simply because it opens its doors to the public. Lloyd Corp., Ltd., supra. Liakos' reliance on Marsh v. State of Alabama (1946), 326 U.S. 501, 66 S.Ct. 276, LloydCorp., Ltd. v. Tanner (1972), 407 U.S. 551, 92 S.Ct. 2219,33 L.Ed.2d 131, and Pruneyard Shopping Ctr v. Robins (1980), 447 U.S. 74,100 S.Ct. 2035, 64 L.Ed.2d 741, to support this position is misplaced.
On one hand, we question the propriety of applying these cases' precedent to the current facts since they each involved private actors who limited the public's ability to come onto their property to exercise First Amendment rights. In contrast, Liakos is a private individual asserting rights to exercise free speech on Liakos' private property. On the other hand, even if we apply their reasoning to the present facts, the cited cases merely show that no constitutional violation will occur by enforcing this covenant because KIR is not a state actor engaged in state action.
In Marsh, the Court found that a private owner of a company town was a state actor because he performed the full spectrum of municipal powers,i.e., the private actor was the functional equivalent of a state actor engaging in state action. Here, however, there is no comparable exercise or assumption of municipal functions or power to indicate the presence of state action. Moreover, Lloyd Corp. Ltd. makes clear that shopping centers, unlike company towns, are not the functional equivalent of a public business district. Thus, a mall owner is not engaged in state action merely because he invites individuals onto his property to shop. Finally, Pruneyard Shopping Ctr. simply stands for the proposition that a state can afford greater speech protections to private individuals through its constitution than otherwise provided for under the federal constitution. Liakos does not argue, nor could he claim that Ohio's Constitution provides rights beyond those granted by the federal constitution in this context. Eastwood Mall, supra.[1]
Furthermore, judicial enforcement of a non-discriminatory restrictive covenant does not constitute state action. Although Shelley v. Kraemer
found that judicial enforcement of a racially restrictive covenant constituted state action, Shelley has been limited by other courts to situations regarding racial discrimination. Davis v. Prudential Sec.,Inc., 59 F.3d 1186, 1191 (11th Cir. 1995); Linn Valley Lakes PropertyOwners Ass'n v. Brockway (Kan. 1992), 824 P.2d 948; Midlake on BigBoulder Lake, Condominium Ass'n v. Cappuccio (Pa.Super.Ct. 1996),673 A.2d 340. We agree with the reasoning set forth by those courts, and see no reason today to extend its holding beyond that context.
Accordingly for the reasons set forth above, Liakos' second assignment of error is overruled.
 III
Both of Liakos' assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, J., and FAIN, J., concur.
[1] We recognize, however, that the Ohio Supreme Court has to a very limited extent expanded free speech rights for opinions collateral to freedom of the press. Wampler v. Higgins (2001), 93 Ohio St.3d 111, 112,752 N.E.2d 962, citing Vail v. Plain Dealer Publishing Co. (1995),72 Ohio St.3d 279, 649 N.E.2d 182.