OPINION
{¶ 1} Appellant, Donald H. Brugmann, appeals from the June 15, 2001 judgment entry of the Portage County Court of Common Pleas Court finding appellant in contempt for violating a previous order of the court.
 {¶ 2} On December 2, 1998, appellant and his deceased wife, entered into a mineral lease ("the lease") with appellee, S S Aggregate, Inc. Under the terms of the lease, appellant granted appellee mining rights to all sand, gravel and aggregate located on one hundred forty-one acres of property that appellant owned in Shalersville. The lease was to terminate at the earlier of the time at which appellee completed operations, or twenty-five years, whichever occurred first. In return for these mining rights, appellant received $225,000 once appellee had obtained all necessary permits, plus a royalty equal to the greater of forty cents per ton for sand and gravel, or six percent of the average selling price per ton, times the number of tons of sand and gravel sold. Appellant also received a rental payment of the greater of ten cents per ton for sand and gravel or one and one-half percent of the average selling price per ton times the number of tons mined. Appellee further agreed to employ appellant's son Michael Brugmann ("Michael") at $45,000 per year for a minimum of two years.
 {¶ 3} As part of the lease agreement, appellant agreed not to compete directly or indirectly with appellee in the sand and gravel business within the geographic area in which appellee did business. Larry Young ("Young"), a vice president of Shelly and Sands, Inc. and the individual in charge of appellee, which is a wholly-owned subsidiary of Shelly and Sands, testified that appellee had seven or eight sand and gravel operations in Ohio, and that appellee operates within a fifty to seventy mile radius of those plants. The duration of this restrictive covenant was for the term of the lease.
 {¶ 4} Both appellant and Young testified that appellant had agreed that once appellee obtained its permits and began operations on the leased property, appellee would close a sand-and-gravel processing plant ("the plant") located on property adjacent to that which he leased to appellee. The plant was owned and operated by Karl Brugmann Sand and Gravel, Inc. ("Brugmann Sand"), of which appellant was the sole shareholder. In spite of this mutual understanding of the terms of the covenant not to compete, appellant continued to process sand and gravel at the plant. Because of appellant's continuing violations of the covenant not to compete, appellee filed a complaint for injunctive relief and damages in the Portage County Court of Common Pleas on May 8, 2000. On May 11, 2000, appellee filed a motion for an ex parte temporary restraining order, which the trial court granted on the same date.
 {¶ 5} A hearing was held on May 18 and 19, 2000, regarding the temporary restraining order. On June 5, 2000, the trial court preliminarily enjoined appellant from violating the covenant not to compete by operating the plant. Nevertheless, on July 28, 2000, Brugmann Sand entered into a lease with Daniel Ballentine to allow Ballentine to use the plant for processing sand and gravel. On August 24, 2000, appellant transferred his interest in Brugmann Sand to Michael. In the year 2000, appellant loaned $66,000 to Brugmann Sand. Appellant also used his personal money to pay the debts of the corporation, permitted the corporation to operate its processing plant rent free on land owned by appellant, and continued to receive $300 per week from Brugmann Sand.
 {¶ 6} Appellee filed a first amended complaint for injunctive relief and damages on August 22, 2000, naming appellant, the estate of his wife, Brugmann Sand, and Daniel Ballentine as defendants. Appellant filed an answer and counterclaim on August 31, 2000. Ballentine filed an answer and counterclaim on September 28, 2000. A hearing was held on the matter on March 21, 2001. In a June 15, 2001 judgment entry, the trial court found appellant in contempt of court and ordered Ballentine not to use any of the personal property of Brugmann Sand to compete with appellee. The trial court further found that there was no just cause for delay.
 {¶ 7} Appellant has filed a timely notice of appeal of the trial court's June 15, 2001 judgment entry and makes the following assignment of error:
 {¶ 8} "The trial court erred to the prejudice of [appellant] in finding that he violated the covenant not to compete contained in the mineral lease between [appellee] as lessee and [appellant] as lessor by entering into a two year lease of personal property owned by [Brugmann Sand] with Daniel Ballentine dba Ballentine Excavating and divesting himself of all ownership of [Brugmann Sand]."
 {¶ 9} We would note initially that appellant has not challenged the validity of the restrictive covenant, including the term of years or geographic area restrictions; therefore, that issue is not before us. The sole issue in this case is whether appellant violated the terms of the covenant.
 {¶ 10} Prior to addressing the merits of appellant's position, we must examine the restrictive covenant at issue. The covenant provides as follows:
 {¶ 11} "Except for Paragraph 32, during the term of this lease, LESSOR shall not compete directly or indirectly, with LESSEE in the sand and gravel business, whether as an individual, or as a stockholder, partner or investor in a corporation, partnership or any other entity, within the geographic area in which LESSEE does business. For purposes of this Agreement, `compete' shall mean to sell or attempt to sell products and services which are the same or as similar to the products and services which were sold by LESSOR, including, but not limited [sic], soliciting, approaching or contacting customers or prospects of LESSOR or LESSEE; accepting such business from such customers or prospects; being an employee, consultant to or otherwise engage [sic] by any person, firm, corporation, partnership or other entity which does so; or interfering in any way with the business relationship between LESSEE and any such customer."
 {¶ 12} Appellant contends that the plant is not mentioned in the restrictive covenant, that it had no connection with the mineral lease, and that if appellee intended to prevent the operation of the plant, such a condition should have been explicitly included in the mineral lease.
 {¶ 13} The rule in interpreting restrictive covenants is that "when a covenant's language is indefinite, doubtful, and capable of contradictory interpretations, courts are to construe the covenant in favor of the free use of land. *** However, courts must enforce a restriction where it is clearly and unambiguously found in a covenant." (Citations omitted.) Brooks v. Orshoski (1998), 129 Ohio App.3d 386,390.
 {¶ 14} In the instant matter, although the restrictive covenant did not explicitly mention the plant, it did explicitly and unambiguously prohibit appellant from competing with appellee either directly or indirectly in the sand and gravel business. Clearly, operating a sand and gravel processing plant yards from the leased property was, at a minimum, indirect competition with appellee, and such activity was prohibited by the restrictive covenant. Also, the testimony in this case indicates that both parties understood that appellant could not continue to operate the plant once appellee began operations on the leased property.
 {¶ 15} Although appellant had subsequently transferred his interest in Brugmann Sand to Michael, he continued to own the property on which the plant is located, for which no rent is paid, he loaned Brugmann Sand $66,000, and he continued to receive $300 per week from Brugmann Sand. In view of those facts, we conclude that appellant is, at a minimum, an investor in Brugmann Sand. Because Brugmann Sand competes with appellee, appellant's role as an investor in Brugmann Sand is prohibited by the restrictive covenant. Therefore, we conclude that appellant is violating the terms of the restrictive covenant contained in the lease, and that his sole assignment of error is without merit.
 {¶ 16} For the foregoing reasons, the judgment entry of the Portage County Court of Common Pleas is hereby affirmed.
ROBERT A. NADER and DIANE V. GRENDELL, JJ., concur.