JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, October Hill Camplot Owners' Association ("October Hill"), appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I {¶ 2} According to the record, on September 15, 2003, October Hill, a nonprofit corporation, filed its complaint for preliminary and permanent injunction against defendants-appellees Eskel Kitchen and Betty Kitchen ("the Kitchens"), the owners of two adjacent camp lots located within the association.
 {¶ 3} The complaint alleged that during late August and early September of 2003, the Kitchens constructed a nonconforming roof over their camper. October Hill alleges that the roof was built in excess of a 12-foot height restriction adopted by October Hill's board of trustees. On September 20, 2005, October Hill voluntarily dismissed its complaint in Cuyahoga County Court of Common Pleas, Case No. CV 03-510275, and on that same day filed a new complaint for preliminary and permanent injunction against the Kitchens.
 {¶ 4} On January 5, 2006, the Kitchens filed their answer and counterclaim for declaratory judgment. On June 30, 2006, October Hill filed its motion for summary judgment. October Hill also filed a separate motion for summary judgment on the Kitchens' counterclaim for declaratory judgment. On July 31, 2006, the Kitchens filed their opposition to October Hill's motion for summary judgment and *Page 3 
reply. On August 4, 2006, October Hill filed a reply to the Kitchens' opposition to its motion for summary judgment.
 {¶ 5} On June 30, 2006, the Kitchens filed their own motion for summary judgment. On July 28, 2006, October Hill filed a response opposing the Kitchens' motion for summary judgment. On September 19, 2006, the trial court granted the Kitchens' motion for summary judgment on its counterclaim. The lower court also denied October Hill's two separate motions for summary judgment, filed on June 30, 2006. October Hill then filed its timely notice of appeal to this court.
 {¶ 6} October Hill is an active nonprofit corporation created and organized in 1974. October Hill filed its articles of incorporation with the Ohio Secretary of State on May 2, 1974 and has been in continuous existence since that time. It is responsible for the management and maintenance of certain common property in the camp lot area. As of October 16, 2003, October Hill consisted of 481 camp lots, with October Hill itself owning 59 of the camp lots and private owners holding title to the remaining lots.
 II {¶ 7} Assignment of error: "The trial court erred as a matter of law by granting defendants' motion for summary judgment on its counterclaim and by denying October Hill's motions for summary judgment as moot, where: (1) the articles of incorporation and code of regulations of the nonprofit October Hill Camplot Owners *Page 4 
Association, Inc., expressly authorized October Hill's board of trustees to adopt rules
and regulations governing the types and design of structures on defendants' lots; and (2) regardless of the expiration date for restrictions set forth in the deeds to defendants' lots, the anti-lapse provisions of numbered paragraph 14 of those deeds prevented defendants from any nonconforming land uses absent written approval of October Hill as the director grantor or as successor in interest to the original grantor-developer."
 III {¶ 8} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 433 N.E.2d 615;Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 364 N.E.2d 267.
 {¶ 9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed.2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. Doubts must be resolved *Page 5 
in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 10} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 11} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v.McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140. *Page 6 
 {¶ 12} October Hill contends that the trial court erred as a matter of law by granting the Kitchens' motion for summary judgment on its counterclaim and by denying their motions for summary judgment. It makes two arguments in its sole assignment of error.
 {¶ 13} October Hill argues that the articles of incorporation and code of regulations authorized its board of trustees to adopt regulations governing the types of structures built. More specifically, it claims that Rule 4C of the 2002 regulations of October Hill governs roof heights over campers and is, therefore, legally enforceable against the Kitchens.
 {¶ 14} October Hill asserts that the Article I, Section 2, subparagraph (d) of its articles of incorporation give it the authority to establish rules and regulations which in effect constitute deed restrictions by limiting the use of the Kitchens' property.
 {¶ 15} Article I, in its entirety, reads as follows:
 "ARTICLE I
 Name and Purposes
 Section 1. Name. The name of the corporation is October Hill Camplot Owners' Association, hereinafter referred to as the `association.'
 Section 2. Purposes. The principal purposes of the association are:
 (a) To own, manage, and maintain the community clubhouse, swimming pool, road system, water wells, facilities and lines and related facilities which are part of the October Hill Camplot area located in Knox Township, Holmes County, Ohio. *Page 7 
 (b) To own, purchase, manage, maintain, repair and replace any or all of the equipment, facilities, roadways, and buildings used in connection with the operation of the community clubhouse, swimming pool, road system, water wells, lines and related facilities;
 (c) To establish an orderly and efficient system of billing to pay for the expenses incurred in the furtherance of the aforesaid purposes;
 (d) To promulgate such rules and regulations and perform such acts as are deemed necessary to achieve the aforesaid objectives;" (Emphasis added.)
 {¶ 16} Subparagraph (d) of Section 2 in Article I, states that the association may promulgate such rules as are deemed necessary to achievethe aforesaid[1] objectives. Article I is the first article in the articles of incorporation, and as such, there are no other articles preceding it. Accordingly, the only aforesaid, or previously mentioned, objectives are listed in subparagraphs (a), (b) and (c) of Article I.
 {¶ 17} Therefore, the purposes for which October Hill was established are limited to subparagraphs (a) — (c). The purposes in those sections include the following: owning, managing, purchasing, maintaining and repairing or replacing any of the equipment, facilities, roadways, buildings, swimming pools or to other related *Page 8 
facilities. As with most associations, the purpose of October Hill is to maintain and control the common areas used by all of the camp lot owners.
 {¶ 18} The powers as set forth in Article III allow for enough authority for the trustees to accomplish the purposes set out in Article I, Section 2.[2] The articles do not give them any more authority than that. Nowhere in the articles of incorporation is the board of trustees, or October Hill itself, granted any innate power to enact or enforce restrictions on property owned by its members. Any restrictions placed on its members are there by virtue of the deed restrictions and not October Hill's articles of incorporation or rules and regulations.
 {¶ 19} October Hill argues that its rules and regulations govern the Kitchens' camp lots. However, there is no indication that it was adopted by anyone in the association as required by R.C. 1702.10.
 {¶ 20} R.C. 1702.10, Adoption of regulations, provides the following:
 "After the articles have been filed and at any time prior to a meeting of voting members, the incorporators or a majority of them, at a meeting, may adopt regulations for the government of the corporation, the conduct of its affairs, and the management of its property, consistent with law and the articles; may elect directors in addition to any directors *Page 9 
named in the articles; and may also elect members in addition to any named or provided for in the articles. If the incorporators fail to adopt regulations as authorized by this section within ninety days after the date of the incorporation, regulations may be adopted at a meeting of voting members by the affirmative vote of a majority of the voting members."
 {¶ 21} No valid code of regulations exists. The code of regulations provided by October Hill is unsigned, undated, and there is no indication it was adopted by anyone in the association as required by Ohio law. October Hill's president testified that in 1994 an attempt to adopt a code of regulations and amend the articles of incorporation was made, however, that attempt failed.[3]
 {¶ 22} In addition, the code of regulations conflicts with the articles of incorporation. The purported code of regulations attempts to expand on the powers of the association. Article III, Section 2(a) of the code of regulations provides the following:
 "Adopt and publish rules and regulations governing the use of the facilities of the Association, the personal conduct of the members and their guests thereon, and the type, design, etc., of structures, fences, etc., on members' lots and, establish penalties for the infraction thereof; * * *"
 {¶ 23} October Hill relies on the provision above for its authority to impose building restrictions on the owners of camp lots. However, nowhere in the articles of *Page 10 
incorporation does October Hill have the power to unilaterally impose deed restrictions and/or building restrictions on the camp lot owners.
 {¶ 24} In fact, to the extent that the code of regulations purports to expand the authority of October Hill, it is in conflict with the articles of incorporation. Article XI, Section 2, of the code of regulations provides that, "in case of any conflicts between the articles and this code of regulations, the articles shall control." In addition, the code of regulations was never filed on record, as required by statute and Ohio law. October Hill states that its authority to impose restrictions on the camp lots comes from the code of regulations.
 {¶ 25} The code of regulations must meet the notice requirements of R.C. 5301.25(A), which provides:
 "(A) All deeds, land contracts referred to in division (B)(2) of section 317.087 of the Revised Code and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument."
 {¶ 26} The requirements of R.C. 5301.25, as they pertain to deed restrictions, were addressed by the Ohio Supreme Court in the case ofEmrick v. Multicon Builders, Inc. (1991), 57 Ohio St.3d 107.
 "However, when construing the provisions of R.C. 5301.25(A) in a more recent case, Tiller v. Hinton (1985), 19 Ohio St.3d 66, 68, 19 OBR 63, *Page 11 
65, 482 N.E.2d 946, 949, this court inserted constructive notice into the test when it said: `Pursuant to this statutory provision, a bona fide purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance.' In determining whether the purchaser had constructive notice, we held that since the encumbrance was never recited in any deed in the chain of title, the purchaser could not be charged with constructive notice. `Because this deed was not timely recorded, there was no record whatsoever of a grant of an easement across appellee's [i.e., the purchaser's] estate in either appellee's or appellant's chain of title. Appellee therefore cannot be charged with constructive notice of the easement.' Id. at 68, 19 OBR at 65, 482 N.E.2d at 949." (Emphasis added.)
 {¶ 27} The deed restrictions set forth in the rules and regulations were not in existence on the date these camping lots were purchased by the Kitchens. In addition, the code of regulations was never filed on record.
 {¶ 28} Accordingly, we find that the articles of incorporation and code of regulations did not authorize the board of trustees to adopt rules governing the types and design of structures on the Kitchens' lots.
 {¶ 29} The second portion of October Hill's argument contends that the anti-lapse provisions of numbered paragraph 14 of the deeds prevented the Kitchens from any nonconforming land uses absent written approval of October Hill.
 {¶ 30} The warranty deed contained certain deed restrictions including the following:
 "14. Term. These restrictions and each of them shall run with the land and be binding upon and be enforceable against the present and future owners of the premises and all persons claiming under them until December 31, 2001, provided that these restrictions may be amended *Page 12 
at any time or from time to time or terminated in whole or in part with respect to any or all lots by a recorded instrument signed by the then 3/4 majority of members in the association. In the event of termination of all or any portion of these restrictions by lapse of time or otherwise, any use of the premises different than that provided for herein shall require the written approval of the grantor and all appropriate governmental agencies in Holmes County." (Emphasis added.)
 {¶ 31} Therefore, according to the warranty deed, 75 percent of the majority of October Hill's members could amend the deed restrictions in a signed recorded instrument. If the members failed to do so, then the deed restrictions for the camp lots, i.e., 363 and 364, would expire on December 31, 2001.
 {¶ 32} As previously mentioned, October Hill's president testified that the deed restrictions were never amended or extended by a 75 percent vote of the members in the association.
 "Q: Okay. So as we sit here today, there are no minutes?
 A: There are no minutes.
 Q: Any and all records that would indicate that 75 percent or more of lot owners of October Hill voted on any matter whatsoever since the inception of the association.
 A: The only document I would know of would be in the minutes book.
 Q: But you don't have the minutes book?
 A: I don't have it.
 Q: So to the best of your knowledge, there's nothing that's been voted on by 75 percent of the members of the association; is that correct? *Page 13 
 A: That's correct."[4]
 {¶ 33} The president of October Hill also testified as to the following:
 "Q: But based on your previous testimony, there was no membership meeting which 75 majority voted on anything?
 A: Correct.
 Mr. Foth: I think he said there was no meeting that passed any amendments by 75 percent. I think he indicated there was an attempt to do so but it didn't happen. That's what I think he said."
 Mr. Pasz: That's fine.
 The Witness: Correct.
 Mr. Pasz: I have no problem with that."[5]
 {¶ 34} Accordingly, the deed restrictions for lots 363 and 364 expired on December 31, 2001 and cannot be enforced against the Kitchens by October Hill.
 {¶ 35} The language in paragraph 14 of the deed indicates that without a three-quarter majority, the warranty deed restrictions expired on December 31, 2001. Moreover, the language in the deed is to be construed strictly and in favor of the free use of property. This is a settled rule of construction, based upon the old principle that restrictions are not favored in the law. Hitz v. Flower (1922), *Page 14 104 Ohio St. 47, 57, 135 N.E. 450. See, also, Driscoll v. AustintownAssociations (1975), 42 Ohio St.2d 263, 276, 328 N.E.2d 395. "Our legal system does not favor restrictions on the use of property." The words used in a restriction will be given their common and ordinary meaning in light of the factual circumstances surrounding their drafting. SeeArnoff v. Chase (1920), 101 Ohio St. 331, 335, 128 N.E. 319; Bennerv. Hammond (1996), 109 Ohio App.3d 822, 827, 673 N.E.2d 205.
 {¶ 36} If the language in a restrictive covenant is clear and not doubtful in meaning, the court must enforce the restriction. SeeCleveland Baptist Assn. v. Scovil (1923), 107 Ohio St. 67, 140 N.E. 647;Brooks v. Orshoski (1998), 129 Ohio App.3d 386, 717 N.E.2d 1137;Dean v. Nugent Canal Yacht Club, Inc. (1990), 66 Ohio App.3d 471, 475,585 N.E.2d 554.
 {¶ 37} The only requirements of the deed restrictions afterexpiration are found in paragraph 14 as follows:
 "any use of the premises different than that provided for herein shall require the written approval of the grantor and all appropriate governmental agencies in Holmes County."
Therefore, the only remaining requirements are that this land is to be used for camping purposes and not permanent residential purposes.
 {¶ 38} Any deed restrictions on lots 363 and 364 expired on December 31, 2001 and cannot be enforced against the Kitchens by October Hill. There was no three-quarter majority vote as required by paragraph 14, therefore, the warranty *Page 15 
deed restrictions expired on December 31, 2001. Accordingly, we find no merit in October Hill's second argument contending that the anti-lapse provisions of numbered paragraph 14 of the deed prevented the Kitchens from any nonconforming land uses absent written approval of October Hill.
 {¶ 39} Accordingly, October Hill's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, J., and MARY J. BOYLE, J., CONCUR
[1] Aforesaid is defined in Black's Law Dictionary
(6thEd. 1990) 61, as "before, or already said, mentioned, or recited; premised. Preceding: opposite of following."
[2] ARTICLE III, General Powers, Section I. Specific Powers. "The association shall have the power to own, accept, acquire, mortgage and dispose of real and personal property, and to obtain, invest or disburse and retain funds, in advancing the purposes stated in Article I. Section 2. General Powers. The association shall have the power to do any lawful acts, or things reasonably necessary or desirable for carrying out the association's purpose, and for protecting the lawful rights and interests of its members in connection therewith."
[3] See Terry Walter's deposition, p. 14.
[4] See Walter deposition, pp. 7-8.
[5] See Walter deposition, p. 14. *Page 1