NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0258n.06

No. 10-3111

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 22, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| TRI-STATE GROUP, INC., | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SUTTON and KETHLEDGE, Circuit Judges, HOOD, Senior District Judge.[*]

KETHLEDGE, Circuit Judge. Sometimes something less than a building is a building nonetheless. The United States owns an easement over Tri-State Group's land. The easement permits the government to exclude "buildings" from the property. The word "building" is not defined in the easement itself. The government says the term should be interpreted to encompass oil-storage tanks and separators. Tri-State disagrees. The district court agreed with the government, and granted summary judgment in its favor. We affirm.

Three-quarters of a century ago, the people in the Muskingum River Basin in Ohio faced two problems. During rain storms, the rivers and tributaries overflowed and flooded the neighboring towns; but in dry times, the water supply was insufficient to meet the needs of the growing

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

population. Their solution to both: a system of fourteen coordinated reservoirs, including the Bolivar Dam.

Bolivar is a dry dam, used only for water storage during flood conditions. When in use, the reservoir fills to its spillway elevation, 962 feet above mean sea level (962' msl), with any excess water passing through the dam's outlet gates. The spillway elevation was selected to accommodate the assumed-maximum-storm for the area. Thus, if the reservoir's capacity is reduced—by obstacles, for example—the likelihood of downstream flooding increases. To acquire the land needed for the reservoir, the District purchased flowage-easement rights from the area property owners. One of those easements is at issue here.

The easement, now held by the United States, grants the government the right to "back water up to and over" the property, to an elevation of 962' msl, and to require the removal of, and consent before the construction of, any "building" within the easement. The land, now held by Tri-State, contains two oil-storage tanks and separators. The United States sued Tri-State, seeking to compel it to remove the tanks and separators. The parties agree that if those structures are buildings, they are prohibited under the easement. So the sole legal question, on this undisputed factual record, is whether the tanks and separators are buildings.

The district court held they were and granted summary judgment to the United States, ordering Tri-State to remove the tanks and separators. We review the court's decision de novo. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).

The parties agree that Ohio law governs this dispute. "In Ohio, as in most states, there is a policy favoring the free and unrestricted use of land." *Univ. Hills, Inc. v. Patton*, 427 F.2d 1094,

1099 (6th Cir. 1970). When the intent of the parties is clear, however, we must give effect to that intent, even if it imposes restrictions on land use. *See Brooks v. Orshoski*, 717 N.E.2d 1137, 1140-41 (Ohio Ct. App. 1998).

Ohio case law gives effect to the parties' intent "at the time the contract was made." *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 740 N.E.2d 328, 339 (Ohio Ct. App. 2000) (internal quotation marks omitted). What matters here, therefore, is not what "building" means today, but what it meant when the original parties signed their agreement in 1939.

Tri-State's own authority in its brief makes clear that "building" was broadly defined at that time. In 1903, an Ohio court explained that: "'*In law*, anything erected by art, and fixed upon or in the soil, composed of different pieces connected together, and designed for permanent use in the position in which it is so fixed, is a building.'" *Univ. of Cincinnati v. Cincinnati*, 1 Ohio N.P. (n.s.) 105, at *5 (Ohio Super. 1903) (emphasis in original) (quoting the Century Dictionary). And in 1936, an Ohio court considered various definitions of "building," including "a structure," "that which is built," and "an edifice for any use." *Kern v. Murph*, 6 Ohio Op. 223, at *2 (Ohio Com. Pl. 1936).

The oil tanks and separators here easily fall within these broad definitions of "building." The term is therefore not ambiguous for purposes of this appeal.

The district court's judgment is affirmed.